UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,

    Plaintiff,

v.                                                Case No. 20-12794
                                                   Honorable Victoria A. Roberts

DARRYL TURNER, ET AL.,

    Defendants.
_____/

**ORDER: (1) GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 36]; (2) REQUIRING DEFENDANTS TO FILE AN ANSWER ON REMAINING CLAIMS; AND (3) DEEMING MOOT DEFENDANTS' MOTION TO STAY DISCOVERY [ECF No. 37]**

**I. Introduction**

Bruce Parker ("Parker") filed a civil rights action against defendants – Michigan Department of Corrections (MDOC) officials – alleging official misconduct and retaliation against him. He says they issued false misconduct tickets, threatened him, and placed him in segregation. He also alleges that defendants failed to provide him with medical assistance when needed, in violation of his Eighth Amendment rights. Parkers says defendants subjected him to retaliation or harm on eleven occasions from March 12, 2020 through March 1, 2021.

In their motion for partial summary judgment, defendants contend that Parker failed to exhaust administrative remedies. Defendants withdrew their challenge to several of Parker's claims in their reply brief. On the claims still at issue, defendants are correct that Parker failed to exhaust.

The Court **GRANTS** defendants' motion for partial summary judgment.

## II. Background

When Parker filed this action against nine defendants (Darryl Turner, Sean Markus, Kimani Sanders, Christopher Sheffield, Jeff Johnson, Michael White, Matthew Nguyen, John Purdom, Brandon Isrow), he was incarcerated at the Macomb Correctional Facility (MRF) in New Haven, Michigan, where the alleged misconduct giving rise to his action occurred.

Four of the claims are based on alleged retaliatory misconduct tickets. The other six claims relate to grievances Parker filed for alleged violations of policy or procedure.

After full briefing, defendants seek dismissal of only three claims: claim 1 – alleged retaliatory misconduct ticket; claim 3 – alleged retaliatory misconduct ticket; claim 4 – grievance alleging excessive force by Defendant White.

### III. Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for her motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies her burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the mere existence of a scintilla of evidence in support of the non-movant's position; the evidence must be such that a reasonable jury could find in its favor. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court only needs to consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**IV. Analysis**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner cannot bring an action challenging his prison conditions unless he exhausts administrative remedies. 42 USC § 1997e(a). "This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Generally, inmates must exhaust through their prison's comprehensive grievance process.  The prison's process

4

determines when and if a prisoner has properly exhausted his claim. *Id*. at 218.

In Michigan, the MDOC Policy Directive 03.02.130 sets forth the grievance process prisoners need to follow to seek redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. There are various steps in the process.

Before submitting a written grievance, the grievant must attempt to resolve any issue with the staff member involved within two business days of becoming aware of the grievable issue. If the issues are not resolved within five business days, the inmate may file a Step I grievance.

If the inmate is dissatisfied with the disposition of the grievance decision, or does not receive a response within ten business days after the due date, he may file a Step II grievance. Finally, the grievant may file a Step III grievance if he is dissatisfied with the Step II result. The grievance process is exhausted once the final response is issued in Step III.

This grievance process applies to prisoners challenging alleged policy violations. As discussed below, the process is different for those who challenge alleged retaliatory misconduct tickets.

### A. Claim 1 and Claim 3 – Retaliatory Misconduct Tickets

#### i. Claim 1

Parker alleges that on March 16, 2020, he spoke to the Assistant Deputy Warden ("ADW") about numerous occasions in which Defendant Turner made sexually inappropriate remarks to Parker. Parker claims that later that day Turner approached him and said "[s]o, your [sic] filing complaints still and discussing with the ADW what me and you had going, huh?" Turner then instructed Parker to put on his mask. Parker told Turner he did not have a mask. Parker claims that Turner then stated, "I know you don't have a mask but I'm still going to write you a misconduct … because of your bullshit grievances." Later that day, Turner filed a Class II misconduct ticket against Parker for Insolence and Disobeying a Direct Order.

Turner's misconduct report says Parker refused to put on a mask despite instructions to do so. He says Parker responded by saying, "I can write too. I like to play the game. You do what you do, and I do what I do."

This misconduct ticket was dismissed by acting hearing officer, Defendant Lt. White. The record does not disclose the reasons for dismissal.

### ii.  Claim 3

Parker alleges that on March 18, 2020, Defendant Markus approached him and instructed him to put his mask on.  Parker claims he was wearing his mask.  Markus then stated, "I heard about who you are and how you keep filing grievances against my coworkers and getting them in trouble."  After Parker told Markus to stop harassing him, Markus stated, "for your grievance motherfucker, especially against my coworker Turner, I'm sending you to segregation for threatening behavior and insolence."  Parker went to segregation that same day and Markus issued a misconduct ticket against Parker.

In his misconduct report, Markus says he asked Parker to put on a face mask and Parker refused.  Markus claims that Parker then told him that he was "going to beat his racist ass."

The misconduct was reviewed on March 18, 2020, but the hearing was not held until May 12, 2020.  During the hearing, Parker asserted that the misconduct should be dismissed because of a due process violation.  The delay of the hearing was partly due to Parker's transfer to a new facility.  Parker argued the delay violated his due process rights under prison policy.  The policy provides that the hearing is to occur within seven business

7

days from the date the misconduct was reviewed. The Administrative Law Judge ("ALJ") agreed with Parker and dismissed the ticket because of the due process violation.

During the hearing, Parker did not allege that the ticket was a retaliatory one. The ALJ's report states, "Prisoner denied threatening the officer or calling him a racist. Prisoner stated he had nothing more to add."

### ii. Retaliatory Misconduct Ticket Process

District courts in Michigan recognize that decisions made in the prison hearings division are non-grievable. *Siggers v. Campbell*, 652 F.3d 681, 693-694(6th Cir. 2011). Instead, prisoners must exhaust and challenge misconduct tickets through a hearing, a rehearing or an appeal of the decision made at the hearing. *Id.*; *see also* MDOC P.D. 03.02.130 (J)(9). Allegations that the misconduct ticket was issued in retaliation against the prisoner must be raised at the misconduct hearing. *Id.*; *see also Parker v. Gainer*, 2018 WL 1578388 at *2 (W.D. Mich. Apr. 2, 2018). If the inmate does not say at the hearing that the issuance of the ticket was retaliatory, any avenue to challenge the misconduct ticket is foreclosed and the inmate has failed to exhaust administrative remedies. *Siggers*, 652 F.3d at 693.

This is precisely Parker's case. The Claim 1 ticket was dismissed before a hearing could be held, so no doubt there was nothing to appeal or ask for a rehearing on. The ticket leading to Claim 3 was dismissed during the hearing and there is no question that Parker did not raise the issue of retaliation before the ticket was dismissed.

Dismissal prior to or during the hearing does not relieve the prisoner of his obligation to exhaust administrative remedies before filing suit.

Parker argues that MDOC P.D. 03.02.130 does not require him to pursue relief through the grievance process after a misconduct ticket has been dismissed. Instead, he says he should be able to bring suit right after the ticket is dismissed. But Parker is wrong.

In determining whether the dismissal of a misconduct ticket is a final decision for purposes of exhausting administrative remedies, it is important to look at the language of the policy. MDOC P.D. 03.02.130 says that an inmate's request for a grievance will be rejected if:

> "The prisoner is grieving a decision made in a Class I misconduct hearing or other hearings conducted by Administrative Law Judges (ALJ's) employed by the Michigan Department of Licensing and Regulatory Affairs (LARA), including property disposition and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing). Prisoners are provided an appeal process for Class I decisions pursuant to PD 03.03.105 "Prisoner Discipline."

The MDOC issued Class 1 and Class II tickets against Parker. The same directive for Class I tickets holds true for Class II tickets. The Court's interpretation of the policy is that while the prisoner cannot grieve a final, substantive decision made *in* a misconduct hearing, he would be able to grieve a non-substantive decision (i.e., dismissal of a ticket for due process violations). And, if inmates are unhappy with the outcome of misconduct hearings, they need to appeal that decision or ask for a rehearing pursuant to P.D. 03.03.105 in order to satisfy the exhaustion requirement. *Ayotte v. Stemen*, 2019 WL 2219739 (E.D. Mich. 2019); *see also Harris-Bey v. Alcodray*, 2017 WL 3124328 (E.D. Mich. 2017) (Alleged retaliatory misconduct ticket was not properly exhausted because the plaintiff failed to raise the claim at the misconduct hearing and did not appeal the finding of guilt following the hearing as required by MDOC P.D. 03.03.105).

The dismissal of Parker's claim 1 ticket prior to the hearing foreclosed his opportunity to raise his allegations of retaliation in a misconduct hearing, on appeal or rehearing. His remedy was to file a grievance so that there could be administrative review of his allegations. "If Plaintiff was not afforded a hearing, he could have filed a grievance." *Ali v. Simmons*, No. 1:19-cv-

10

126, 2020 WL 6597562 (W.D. Mich. May 5, 2020). Parker did not do that and thus, he failed to exhaust remedies before filing suit.

Parker's claim 3 ticket was dismissed because of a due process violation, not because of a substantive issue such as a finding of guilt. It is the Court's interpretation of the MDOC policy that Parker could have grieved the dismissal. The ability to proceed through the grievance process is an available remedy that has not yet been exhausted. Moreover, even if the dismissal of the retaliatory misconduct ticket is non-grievable, Parker failed to raise these allegations during the hearing. The Sixth Circuit has made it clear that a plaintiff must raise such allegations in the hearing to satisfy the exhaustion requirements. *Siggers*, 652 F.3d at 693.

Parker would need to seek relief through the grievance process to satisfy exhaustion requirements for both of these claims. He did not. The Court dismisses Claims 1 and 3 of Parker's complaint for failure to exhaust.

### iii. Claim 4 – Excessive Force Grievance

On March 25, 2020, Parker was in the health service unit when he began to feel dizzy and had shortness of breath. Defendant White responded to the unit and instructed Parker to get back to his unit. Parker told White he could not walk back because of his dizziness and shortness

of breath. Parker claims that White became irate and stated, "Parker, get the fuck out of healthcare before I physically move your ass out." White then allegedly "rushed" Parker and used excessive force to physically restrain him. During this restraint, White bent Parker's left wrist back. Parker claims this injury caused him non-stop excruciating pain. Parker contends that he mailed the written grievance on March 25, 2020, but received no response. Defendants claim there is no record of Parker filing a grievance and he has not offered corroborating evidence that he submitted a Step I grievance. Defendants say this amounts to a failure to exhaust.

Defendants bear the initial burden of production and persuasion on the issue of exhaustion. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies."). However, once a defendant carries the burden and shows the prisoner failed to exhaust available administrative remedies, "the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward, with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Bennett v. Mich. Dep't of Corr.*, No. 15-14465, 2017 WL 3208591, at

*5 (E.D. Mich. July 24, 2017) (quoting *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)).

"Disputed issues of fact regarding exhaustion under the PLRA present a matter of judicial administration that could be decided in a bench trial." *Lee v.* Willey, 789 F.3d 673, 678 (6th Cir. 2015). Federal district or magistrate judges can resolve issues of material fact related to the exhaustion of administrative remedies. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). Judges are permitted to make credibility determinations and resolve factual disputes pertaining to exhaustion. *Lee*, 789 F.3d at 680.

This Court ruled on a similar dispute in *Alexander v. Calzetta* WL 1011106 (E.D. Mich. Mar. 4, 2019). In *Alexander*, the prisoner claimed that he filed a grievance and never received a response. The Court held that the MDOC defendants met their burden to show that more likely than not Alexander did not exhaust his administrative remedies.

In *Alexander*, Magistrate Judge Patti held an evidentiary hearing on this narrow issue. Evidence presented at the hearing included: exhibits submitted by the MDOC defendants; testimony from the MDOC Hearings Administrator and Grievances Section Manager; testimony from the Grievance Coordinator and Hearing Investigator; and testimony from the

13

plaintiff. The Grievance Coordinator testified that she did not receive a grievance from the plaintiff. Moreover, the coordinator did not receive a notice or kite from the plaintiff to follow-up on the grievance he claimed he filed. The Magistrate Judge concluded that based on the totality of the testimonial and documentary evidence presented at the evidentiary hearing, the preponderance of the evidence supported a finding that the plaintiff did not file the disputed grievance.

The Court adopts this reasoning. As part of defendants' motion for summary judgment, they included an affidavit from a MDOC Departmental Analyst that provides Parker's Step III Grievance Report. The report tracks all of his grievances filed at Step III from January 2013 through December 2020. The defendants also included those Step III grievance decisions. Neither one of these reports shows that Parker filed a grievance for the March 25, 2020, incident.

Although Parker has no burden to prove that he exhausted administrative remedies, he has not provided any support that would suggest that he did file a grievance. Parker attached a kite that he sent to Healthcare on March 25, 2020, requesting a medical examination of his left wrist after Defendant White allegedly used excessive force and hurt his wrist

earlier that day. Parker did not mention in his complaint or show any indication that he followed-up on his grievance. Nor does the record reflect that Parker filed a Step II complaint to escalate the Grievance Coordinator's lack of response.

Given Parker's proven understanding of his due process rights under the MDOC policy, it would follow that he would have raised this issue shortly after not receiving a response. In fact, he filed another grievance the following day, May 26, 2020, and properly exhausted that claim through Step III. It is reasonable to assume that he would have at least inquired into the grievance that he claimed he filed on May 25, 2020, due to subsequent grievances being processed first.

The burden is not Parker's to show that he exhausted administrative remedies. However, the Court believes the defendants presented sufficient evidence that no grievance was filed. The Court cannot think of anything else the defendants could do to show that Parker failed to exhaust administrative remedies. After taking a holistic view of the record, it is more likely than not that Parker did not file a grievance for claim 4.

## V. Conclusion

Parker's complaint contains ten claims. Defendants filed this motion for partial summary judgment originally seeking dismissal of six of them on which they say Parker failed to exhaust: 1, 3, 4, 6, 8, 10. Defendants withdrew their motion to dismiss claims 6, 8, 10. That portion of defendants' motion is deemed withdrawn.

On claims 1 and 3, Parker was required to seek relief through the grievance process. He failed to do that. On claim 4, defendants sustain their burden to show that it is more likely than not that Parker failed to exhaust administrative remedies. Their motion is granted with respect to Claims 1, 3 and 4.

Defendants concede that Parker exhausted administrative remedies on Claims 2, 7, 9, and 11.

The case will move forward on Parker's following claims:

2 – Grievance alleging that Defendant Turner called Parker a rat in front of other prisoners and threatened to put him in segregation.

6 – Defendant Sheffield threatened Parker and wrote a misconduct ticket against him in retaliation for his grievances.

7 – Grievance alleging Defendant Johnston failed to treat Parker's asthma attack.

8 – Grievance alleging Defendant Sheffield threatened Parker and made him get down on his knees in a sexual nature.

9 – Grievance alleging Parker complained about Defendant Sheffield to Defendant Nguyen and Defendant White, but they refused to listen and failed to protect Parker from Sheffield.

10 – Defendant Purdom took Parker to segregation and issued a false misconduct ticket in retaliation for Parker requesting a grievance and protection.

11 – Grievance alleging Defendant Isrow failed to respond to Parker when he was having a severe asthma attack.

The Court **GRANTS** defendants' motion for partial summary judgment. Defendants must file an answer to the remaining claims by April 17, 2022. The Court deems **MOOT** Defendants' motion to stay discovery [ECF No. 37].

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 9, 2022